# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| LESLIE FAIR-GRAY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 03-00097 (EGS) |
| | ) | |
| DIRK DIJKERMAN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## REPLY MEMORANDUM IN SUPPORT OF
## PLAINTIFFS' MOTION TO COMPEL DISCOVERY

## INTRODUCTION

In its Opposition to Plaintiffs' Motion to Compel Discovery ("Opp."), the United States stubbornly insists that it – not the Court – should dictate the progress of discovery on the "scope of employment" issue. The Government admits to picking and choosing which of Plaintiffs' discovery requests merit a response, and maintains an unjustified prerogative to bring this inquiry to an abrupt and unnatural halt, with little more than the conveniently-worded statements of its own employees. Moreover, with respect to Mr. Dijkerman, the United States continues to want it both ways: protesting his exposure in this case, defending his private representation, *and claiming that it is helpless to obtain his assistance* (although the Government employs him as well), while spending public funds and resources to substitute itself in this case, *for the sole purpose of terminating Plaintiffs' suit against him.*

The Court has authorized Plaintiffs' discovery so it may consider the pending Motion for Substitution on a record that is fully developed, not merely developed in part.  Because the Government withholds key evidence on the scope inquiry – namely, responses to the overwhelming majority of Plaintiffs' interrogatories and document requests, its Rule 30(b)(6) deposition, and the now necessary depositions of Mr. Dijkerman, Jeffrey Axelrad, and the six declarants who putatively "demonstrate the answer" to the questions at bar, Opp. at 5 – the Court should grant Plaintiffs' Motion to Compel, and deny the Government's Motion to Stay.

## ARGUMENT

### I.    The Court Should Compel the United States' Responses to Plaintiffs' Written Discovery Requests.

The Government's brief in opposition opens by addressing the two-thirds of Plaintiffs' interrogatories and requests for documents to which it has provided no answer whatsoever.  Promising to "explain[] its objections," Opp., at 2, what follows does little more than repeat what the United States has unabashedly declared before, and rehash the Government's misguided view that *some* discovery is enough to discharge its present obligations.  Plaintiffs' Motion divided this discovery into five distinct categories, and demonstrated how each relates to whether Mr. Dijkerman was within the scope of his employment when his car recklessly and negligently crashed into the Grays, killing Reuben and seriously injuring his son Brandon.  *See* Plaintiffs' Motion to Compel, at 15-20.  The United States' responses to each category basically reduce to a pair of arguments, each running counter to the controlling law on point.

First, the Government attempts to throw the baby out with the bath water. The United States artfully dodges stating it directly, but its position is both unmistakable and unprecedented – that some of its objections (especially for irrelevance, overbreadth, and privilege) serve *to void completely* those requests to which the objections are made.  Objections to discovery, assuming *arguendo* they are valid, provide a basis for a limited response, *not for no response at all.  See* FED. R. CIV. P. 33(b)(1) (when interrogatory "is objected to, … the objecting party shall state the reasons for objection and *shall answer to the extent the interrogatory is not objectionable*" (emphasis added)); FED. R. CIV. P. 34(b) (when document request "is objected to, … the reasons for the objection shall be stated[, and i]f objection is made to part of an item or category, the part shall be specified *and inspection permitted of the remaining parts*" (emphasis added)).

In fact, the United States does not seriously dispute that at least a portion of each of its responses to Plaintiffs' written discovery would provide evidence squarely applicable to the scope issue, all but acknowledging that these objections overreach. Its blustering rhetoric aside, the United States knows full well that Plaintiffs are not concerned with discovery about, for example, "cleaning staff and gardeners"; United States facilities "all over the world"; "the grounds of the Washington Monument to the Space Shuttle Endeavor"; and Mr. Dijkerman's "I.R.S. tax bracket[,] his medicare contributions[,] and his voting rights." Opp. at 4.  Nor do Plaintiffs, as they have told the United States before, have any intention of

invading the various legal privileges that the Government may legitimately assert. These arguments are specious, and are not worthy of Government counsel.

Rather, as the United States is aware, Plaintiffs have drafted these requests to obtain discovery about the circumstances surrounding Mr. Dijkerman's collision with the Grays, and about how those circumstances relate to Mr. Dijkerman's work as a Government official abroad. The requests are not vague. Plaintiffs reasonably anticipate, however, that this discovery will entail varying degrees of specificity; some may pertain to Mr. Dijkerman and Mr. Dijkerman alone, some is more general in nature. But the Government will not help Plaintiffs be more precise.[1] The United States is using its objections as a smokescreen for an unexplained institutional intransigence, and thereby reflecting a callous refusal to provide Plaintiffs material information about their case. Plaintiffs' Motion set forth the terms of proper responses to this discovery, and the Court should compel the United States to respond on those terms.[2]

---

[1]    Probably because of similar tactics, broadly drafted requests are perfectly common in scope discovery, as shown by a case chiefly relied upon in the current brief of the United States. *See, e.g.*, *Alexander v. FBI*, 192 F.R.D. 37, 41-42 (D.D.C. 2000) (Lamberth, J.) (granting motion to compel scope discovery requests for "any and all" documents and records "concerning or relating to" various topics) (prior decisions quoted by Opp., at 13, 15-16).

[2]    The United States' extreme position overlooks that, after discovery is complete, it can expect to have at least one other opportunity to argue that specific evidence is improper for the Court's consideration. The Court's resolution of the scope issue may involve not only discovery, but also briefing and an evidentiary hearing, in which the distinction between evidence properly discovered and evidence actually admitted as proof – embodied in Federal Rule of Civil Procedure 26(b)(1) and throughout the Federal Rules of Evidence – will apply in full. *See, e.g.*,
(continued...)

Second, the brief of the United States implies that the Government's evidence on scope is fungible and duplicative, and contends that any random fraction – such as the small amount it has produced so far – will more than satisfy the Court's independent duty to resolve this matter.  If the Court wants any more, the Government asserts, the six declarations of its employees (which Plaintiffs *did not* request) fill that gap.  The United States cites no Westfall Act case in which a court has endorsed this implausible view, and Plaintiffs' independent research reveals none.  It wholly disregards the possibility of inconsistency or contradiction in the evidence that the Government controls, and miscasts and mischaracterizes the reason for the present discovery in the first place.  It does not suffice, of course, for the Government to produce enough to make a scope decision *possible*; this discovery occurs to make the scope decision *right.  See, e.g., Schrob v. Catterson*, 967 F.2d 929, 933-34 (3d Cir. 1992) (dismissing appeal of district court's order of "full discovery on the underlying facts" "to establish a complete factual record," even when paying "great deference" to scope certification).

---

(...continued)

*Kimbro v. Velten*, 30 F.3d 1501, 1509 (D.C. Cir. 1994) ("If there is a material dispute as to the scope issue, the district court must resolve it at an evidentiary hearing.") (cited by *Caesar v. United States*, 258 F. Supp.2d 1, 4 (D.D.C. 2003) (Sullivan, J.)); *Deane v. Light*, 970 F. Supp.2d 465, 466-67 (E.D. Va. 1997) (court considers motion *in limine* to limit scope discovery admissible at evidentiary hearing).  The tests of *admissibility* will address many of the United States' instant concerns, which are not grounds for depriving Plaintiffs of *discovery* at this earlier, comparatively preliminary stage of the case.

Here, the Government has left *thirty-seven* of Plaintiffs written discovery requests unanswered.  Notably, there is not *one* for which the United States asserts that responsive, relevant discovery does not exist.  Because *all* such discovery belongs in the record of this case, this portion of Plaintiffs' Motion to Compel should be granted.

## II.    The Court Should Compel the United States' Production of Witnesses for Deposition.

The United States likewise misses the point of Plaintiffs' Motion to Compel the deposition of Mr. Dijkerman, its own deposition under Federal Rule 30(b)(6), the deposition of Jeffrey Axelrad, and the depositions of the six Government employees whose declarations the United States puts at the forefront of its case.  *See* Opp., at 5 ("the sworn testimony of six declarants already demonstrates the answers to those [scope] issues"); *see also* Stay Reply (filed Aug. 18, 2003), at 2 (declarants have "first-hand knowledge of facts pertinent to whether Mr. Dijkerman was acting within the scope of his employment"); *id.*, at 6-10 (quoting declarations throughout analysis of scope of employment factors, as declarants have "the most information" relevant to the scope question, and "provide the facts and details necessary for the Court's independent resolution of that legal issue").  Its arguments against this relief are unavailing, largely incapable of denying that the proposed depositions are of value to the Court's scope inquiry, or of otherwise identifying persuasive grounds why the depositions should not proceed.

### A.    The Court Should Compel the Deposition of Mr. Dijkerman.

Most prominently, the United States hardly musters a defense of Mr. Dijkerman's "refusal" to assist with its scope discovery, although he is the employee whose scope – and potential dismissal from the case – is at issue.  Apparently without precedent for its position, the United States half-heartedly shifts the blame for Mr. Dijkerman's refusal to cooperate to his private counsel, which it purports is "appropriate" for him to have retained in this matter.  Opp., at 13.  The effort rings hollow.  After all, it is Government counsel, not private counsel, who is tirelessly laboring to shield Mr. Dijkerman from liability on every front.  It is the Government, of course, that moves to substitute itself as well as to dismiss here; in contrast, Mr. Dijkerman's private counsel is entirely uninvolved, having never even entered an appearance.[3]  And it is also the Government that has summarily disposed of Plaintiffs' separate administrative claims (under the FTCA) that are the subject of the related case, concluding there is "no evidence of negligence" in the accident that Mr. Dijkerman caused.  *See* Exhibit A hereto (State Department Denial, May 22, 2003).  That decision rejected without explanation the opposite, contemporaneous findings of a United Nations investigation, as well as substantial

---

[3]    In this vein, for no apparent reason, the United States has gratuitously raised doubts regarding the Court's personal jurisdiction and venue in a case against Mr. Dijkerman individually.  *See* Opp. at 14, n.3.  In reality, what is "unclear" is the United States' standing to make such claims, the claims' legal merit (given, *inter alia*, Mr. Dijkerman's employment by a federal agency headquartered in Washington, D.C.), or how the claims are properly before the Court at this time.

other evidence pointing the same way.[4]  For all intents and purposes, it is the Government that is defending Mr. Dijkerman in this case, and it should be incumbent upon the Government to ensure his involvement in submissions that it makes on his behalf and for his direct benefit.  He works for the Government, and the Government should produce him for a deposition.

**B.    The Court Should Compel the Rule 30(b)(6) Deposition of the United States and the Deposition of Mr. Axelrad.**

The United States' substantive challenges to Plaintiffs' Rule 30(b)(6) deposition of the United States, and to the deposition of former Government lawyer Jeffrey Axelrad, are nominal at best.  In fact, the Government mentions the Rule 30(b)(6) deposition only once, in a footnote, feigning surprise to see the deposition raised in Plaintiffs' Motion.  *See* Opp., at 14 n.4.  As the Court knows, the parties actually have discussed that deposition at least twice, in the exchange of correspondence attached as Exhibits C and D to Plaintiffs' Motion to Compel, as well as in advance of the United States' Motion to Stay Discovery outright.

---

[4]    The United Nations Report on the accident is unequivocal: in its words, the evidence "clearly shows that Mr. Dirk Dijkerman is responsible," and "[t]here can be no doubt that Mr. Dijkerman drove his vehicle recklessly contrary to the Laws of Kenya."  The Report specifically indicts Mr. Dijkerman for "not present[ing] himself to the Police until almost two days" after the accident, and found that while he "had the presence of mind to use his telephone to call for assistance, [he] did not call for the emergency services and have them attend the scene, or take any positive steps at the time to assist Mr. Gray and Brandon."  Accordingly, the Report determines, "the actions taken at the scene of the accident … fall below what can reasonably be expected of persons attending a scene of a serious accident."

The complete Report is among the attachments to Plaintiffs' Response to United States' Motion for Substitution and Motion to Dismiss.

Assuming the latter motion is denied, the Rule 30(b)(6) deposition of the United

States should proceed.[5]

Nor should the recent retirement of Mr. Axelrad prevent Plaintiffs from

deposing him.  As the Supreme Court has noted:

> When the United States [arguably] retains immunity
> from suit, certification disarms plaintiffs.  In such a case,
> the certification ... does not expose the United States to
> liability, and it shields a federal employee from liability.
>
> But that is not all.  *The impetus to certify becomes
> overwhelming in [this type of] case.* ... If the [Government]
> refuses certification, the employee can make a federal
> case of the matter by alleging a wrongful failure to certify.
> ... Inevitably, the [Government] *will feel a strong tug to
> certify, even when the merits are cloudy*, and thereby "do a
> favor," both for the employee and for the United States as
> well, *at a cost borne solely, and perhaps quite unfairly, by
> the plaintiff.*

*Guiterrez de Martinez v. Lamagno*, 515 U.S. 417, 427-28 (1995) (internal citations

omitted) (emphases added).  It is that "overwhelming impetus," that "strong tug,"

and that "unfair cost" that rightfully trigger this aspect of Plaintiffs' Motion.

Cleverly, the United States casts the thrust of Plaintiffs' interest as "Mr.

Axelrad's impressions or opinions[, which] are utterly irrelevant to the Court's *de

novo* determination" of the scope of employment issue.  Opp., at 18.  The Court

should reject the Government's attempted slight of hand.  Plaintiffs have

---

[5]    On the merits, the United States' position on the Rule 30(b)(6) deposition is
consistent with its July 7 letter to Plaintiffs' counsel regarding discovery (Exhibit C
to Plaintiffs' Motion to Compel).  The United States made no challenge to Plaintiffs'
right to take it.  *See* Plaintiffs' Motion to Compel, at 8 n.7.

consistently agreed that Mr. Axelrad's "impressions or opinions" take second stage to his own cryptic reference, in the certification itself, to "the information now available with respect to the allegations." His deposition will serve to ensure that Plaintiffs – and the Court – can understand and appreciate the same information for themselves, rather than have nothing but Mr. Axelrad's personal opinion on what that information means. Alternatively, the United States continues to protest that Mr. Axelrad's testimony is somehow privileged *per se*, while still providing no legal support for that sweeping view. As Plaintiffs have informed Government counsel, if privilege applies, it "should be asserted on a specific question by question basis, not in th[is] broad and boundless fashion." Exhibit D to Plaintiffs' Motion to Compel Discovery (Newberger Letter, July 11, 2003), at 5. In his deposition, Plaintiffs certainly will honor bona fide privilege claims regarding specific questions. But the examination of Mr. Axelrad on non-privileged subjects, related to the facts underlying his certification, is a natural component of Plaintiffs' Court-approved discovery. The Court should order it to take place.

### C. The Court Should Compel the Depositions of the United States' Six Declarants.

Lastly, the United States objects to Plaintiffs' seeking to depose the six individual declarants that the Government has injected into this case. The United States' arguments against these depositions are, again, primarily procedural, and relentlessly emphasize form over substance. It is of no moment that Plaintiffs have not yet issued a subpoena. These individuals are mostly under the Government's authority, and the Court, of course, can direct their appearance as such. In any

event, when the Court decides the pending motions, if Plaintiffs must subpoena deposition witnesses, or enlist other forms of judicial assistance, they will do so. However, Plaintiffs have issued no subpoenas thus far because the United States' Motion to Stay – filed before Plaintiffs moved to compel – seeks an end to *all* discovery; in this posture, subpoenas, or even additional notices of deposition, would accomplish little more than further motions practice, needlessly burdening the Court. Meanwhile, there most certainly is "[some]thing to compel," Opp., at 14, the Government's excessively stilted approach incompatible with the overriding mandate of the Federal Rules. *See* FED. R. CIV. P. 1 (Federal Rules "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action").[6]

By similar logic, the United States attempts to distinguish the numerous cases in which this Court, in exercises of its discretion, has required individuals located overseas to travel to the District of Columbia for depositions. The Government contends that unless the United States is a *defendant*, that precedent

_____

[6]    The Court should also consider Rule 1 in resolving the Government's complaints with the two deposition notices deemed served by the Court's July 1 Order – the Rule 30(b)(6) notice to the United States, and the notice to Mr. Axelrad. *See* Opp., at 14-15 ("Plaintiffs have not properly noticed a single deposition [or] issued a single subpoena."); *id.*, at 15 nn.5-6 (because Plaintiffs' notices of deposition allegedly "do not comport with [Rule] 30(b)(1)," "there has been no proper notice or subpoena for the United States to quash"). As is commonplace in federal court litigation, these notices omitted a specific date and time for the depositions, so that Plaintiffs could accommodate the schedules of the United States, its Rule 30(b)(6) witnesses, and Mr. Axelrad; that flexibility also allowed for the Court's ruling, somewhat peculiar to Westfall Act cases, on whether Plaintiffs' proposed discovery should proceed at all.

does not apply.  *See* Opp., at 16.  The courts' reasoning in those cases unambiguously refutes the Government's view.  Depositions of foreign parties, and of the natural persons that comprise them, occur in Washington when Washington is the center of gravity for the case.  *See, e.g.*, In re *Vitamins Antitrust Litig.*, 2001 U.S. Dist. LEXIS 24025, at *31-33 (D.D.C. Nov. 30, 2001) (citing "the number of defense attorneys with offices in or easily accessible to Washington, D.C.," and that "depositions in Washington would aid the Court in promptly resolving [any] disputes"); *Financial Gen. Bankshares, Inc. v. Lance*, 80 F.R.D. 22, 23 (D.D.C. 1978) ("[c]ounsel for all of the parties are located here or in New York," and "the Court is here and could promptly resolve any disputes arising during the depositions without costly continuances").

    To the extent a party's role in a case bears some examination, when compared to *Vitamins, Bankshares*, and other similar decisions, here there is *more* reason, not less, for compelling the United States to produce its employees.  Here, the United States is not an unwilling defendant, but elected to intervene, *and has come before the Court voluntarily*.  Moreover, these depositions would aid the resolution of a motion to substitute that the United States chose to file.  In addition, if granted, that motion could lead to the final disposition of the case, via the United States' companion Motion to Dismiss.  Further, in all likelihood (as Plaintiffs noted at the June 16 hearing, *see* Hearing Tr., 5:10-5:23 (attached as Exhibit B hereto)), the declarants are coming to Washington soon anyway, in the normal course of their duties.  Perhaps most compelling, however, is that the United States has made the

future of this litigation hinge, almost entirely, on what these six people have to say on the scope issue.  Plaintiffs merely propose employing "the greatest legal engine ever invented for the discovery of truth" – cross-examining the declarants in a deposition.  *California v. Green*, 399 U.S. 149, 158 (quoting 5 JOHN HENRY WIGMORE, WIGMORE ON EVIDENCE § 1367 (3d ed. 1940)).

With so much riding on whether the declarants are correct or not, credible or not, and complete or not, compelling their production for this testimony is a proper exercise of the Court's discretion in this case.  In this regard, Plaintiffs' Motion to Compel should be granted.

## CONCLUSION

In so many ways, the United States "doth protest too much."  WILLIAM SHAKESPEARE, HAMLET: THE PRINCE OF DENMARK act III, sc. 2.  The issues before the Court are simple: the United States has produced a mere modicum of what the Court's July 1 Order requires; will not enlist the help of Mr. Dijkerman, while it tries to help him prevail in this suit; and asks the Court to be satisfied with the statements of six complete strangers to the case, in lieu of the full discovery envisioned to date.  The Government fails to show how this conduct is legitimate under the law.  Plaintiffs are skeptical; the Government seems desperate to keep something under wraps.  But it is the Government's own Motion to Substitute that has made this discovery so vital.

As a factual issue, there is no real dispute that the blame for the tragedy giving rise to this case lies with the negligent driving of Mr. Dijkerman.  If, as a

legal issue, the United States is determined – as its Motions to Substitute and to Dismiss suggest – that no one should be held responsible, then it must accept the conditions on which the case can come to that end.  The United States must produce the discovery that the Court, by its July 1 Order, has required.  For these reasons, Plaintiffs' Motion to Compel Discovery should be granted.

Respectfully submitted,

Stuart H. Newberger (D.C. Bar No. 294793)
Laurel Pyke Malson (D.C. Bar No. 317776)
Katherine J. Nesbitt (D.C. Bar No. 474681)
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C.  20004-2595
(202) 624-2500

Attorneys for Plaintiffs

August 25, 2003

2067582v4

- 14 -